**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1441**

ALYSSA REID,

Plaintiff – Appellant,

v.

JAMES MADISON UNIVERSITY, a public university; JONATHAN R. ALGER, sued in his official and individual capacities; HEATHER COLTMAN, sued in her official and individual capacities; ROBERT AGUIRRE, sued in his official and individual capacities; AMY M. SIROCKY-MECK, sued in her official and individual capacities,

Defendants – Appellees,

and

JANE OR JOHN DOES, sued in their official and individual capacities; UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, Secretary of U.S. Department of Education, sued in his official capacity,

Defendants.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Elizabeth Kay Dillon, District Judge.  (5:21–cv–00032–EKD)

Argued:  October 27, 2023                     Decided:  January 9, 2024

Before NIEMEYER, THACKER, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Niemeyer and Judge Thacker joined.

---

**ARGUED:** Gregory Dolin, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellant.  Erika L. Maley, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Harriet Hageman, John J. Vecchione, Markham Chenoweth, NEW CIVIL LIBERTIES ALLIANCE, Washington, D.C., for Appellant.  Jason S. Miyares, Attorney General, Charles H. Slemp, III, Chief Deputy Attorney General, Sandra S. Gregor, Assistant Attorney General, Amy E. Hensley, Assistant Attorney General, Andrew N. Ferguson, Solicitor General, Lucas W.E. Croslow, Deputy Solicitor General, Annie Chiang, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

---

QUATTLEBAUM, Circuit Judge:

This appeal requires us to determine, for statute of limitations purposes, the accrual point of a plaintiff's claims that a university violated Title IX's anti-discrimination provisions and her procedural due process rights when handling sexual harassment allegations made against her.

While working as a faculty member at James Madison University in Virginia, Alyssa Reid was accused of violating JMU's Title IX policy against non-consensual relationships based on her past relationship with a graduate student. JMU investigated the accusation and held a hearing on the matter, leading to a dean's April 2019 decision that Reid violated the policy. Under the same Title IX policy, Reid appealed the dean's decision to JMU's provost, who denied her appeal in June 2019. In May 2021—over two years after the dean's decision but less than two years after the provost's denial of her appeal—Reid sued JMU and several JMU officials in federal court, raising three due process claims under both 42 U.S.C. § 1983 and the Virginia Constitution and a sex discrimination claim under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88. Finding that Reid's claims accrued when the dean made his decision, the district court held that they were barred by the applicable two-year statute of limitations and granted JMU and its officials' motion to dismiss Reid's complaint.

On appeal, Reid argues that the district court erred in dismissing her claims as time-barred. Reid contends that her claims accrued not when the dean issued his April 2019 decision, but when the provost denied her appeal in June 2019. Reid thus contends that she brought her May 2021 claims within the two-year statute of limitations. For the reasons

3

explained below, we agree. So, we reverse the dismissal of Reid's claims and remand for further proceedings.

## I. BACKGROUND

### A. Reid's Claims

In 2012, Reid began working at JMU's School of Communication Studies as both the Assistant Director of Individual Events and a lecturer. In the former role, Reid helped manage the JMU Individual Events Team, the university's undergraduate speech and debate team. In the latter role, she taught undergraduate speech classes. While teaching a speech class during her first year at JMU, Reid met then-undergraduate student Kathryn Lese.[1] As Reid puts it, the two soon became "best friends." J.A. 48. Though Lese graduated from her undergraduate program in the spring of 2014, she returned to JMU in the fall of that same year as a graduate student. In connection with her graduate program, Lese was assigned to work with the Individual Events Team, which Reid continued to manage. Reid maintained that she had no authority over Lese during this time, asserting that their dynamic was one of "colleagues and co-coaches with largely similar responsibilities." J.A. 48.

In October 2015, Reid and Lese traveled with the Individual Events Team to a speech and debate tournament in New Jersey. During the trip, Reid and Lese drank alcohol in Lese's hotel room, where Lese expressed her romantic feelings for Reid. Reid

---

[1] The parties have chosen not to anonymize Lese's identity.

purportedly changed the subject. According to Reid, Lese pursued her for the next month, though both women were in relationships with other people. Reid contends that she resisted Lese's advances until November 2015, when they attended a national conference together in Nevada. It was during that trip that, according to Reid, Lese "forcefully kissed" her. J.A. 50. After the trip, the women broke up with their respective partners and began an exclusive relationship.

Reid contends that she and Lese mutually agreed to keep their relationship quiet to avoid impacting the Individual Events Team and generating interdepartmental gossip. They continued dating into May 2016, when Lese completed her graduate program. The same month, an unknown individual anonymously submitted a Title IX allegation against Reid, accusing her of having an inappropriate student-faculty relationship with Lese. Reid alleges that she was not made aware of this allegation until JMU notified her that it had investigated the accusation and found no wrongdoing under the JMU's then-existing Title IX policy.

In June 2016, JMU hired Lese as a full-time employee in the JMU Program Board. During the summer of 2017, Reid and Lese continued dating and eventually moved in together. However, in February 2018, the couple broke up. The break-up was not amicable.

On December 4, 2018, roughly ten months after the relationship ended, Lese emailed JMU's Title IX Coordinator Amy M. Sirocky-Meck a "Title IX Statement." J.A. 184. In it, Lese recalled her relationship with Reid between October 2015 and May 2016, when Lese was still a graduate student. Lese alleged that she was initially concerned about becoming romantically involved with Reid because Reid "was [her] supervisor," but Reid

5

told her if they "kept things quiet everything would be fine." J.A. 184. Lese further alleged that, after they began dating, Reid told her not to expose their relationship "out of fear that it would have negative consequences professionally." J.A. 185. Lese asserted that Reid continued to instruct her to keep their relationship a secret after Lese graduated in May 2016, which Lese stated was "problematic and stemmed from the power dynamics of the student-to-faculty relationship." J.A. 185. Lese conveyed that she had since realized Reid manipulated her during their relationship.

Upon receiving Lese's email, Sirocky-Meck appointed herself the investigating Title IX Officer over Lese's report. Sirocky-Meck then emailed Reid to inform her that she had been named a "Respondent in a Formal Complaint of Sexual Misconduct" filed one day earlier.[2] J.A. 56. In her email, Sirocky-Meck told Reid that the complaint asserted that "you and Ms. Lese were involved in a romantic and sexual relationship beginning Fall 2015 during the time when Ms. Lese was a graduate assistant with the Individual events team that you served as Assistant Director for," in violation of JMU's new Title IX policy against non-consensual relationships. J.A. 187.[3]

---

[2] According to Reid, Sirocky-Meck improperly treated Lese's unsigned Title IX Statement as a formal complaint and incorrectly informed her that the Title IX Statement was submitted on December 12, 2018.

[3] The parties dispute which JMU Title IX policy applied to Lese's complaint. Sirocky-Meck informed Reid that she was accused of violating Policy 1340. But that Title IX policy was not enacted until after Lese completed her graduate program and became a full-time JMU employee. While Lese was a graduate student, JMU's governing Title IX policy was Policy 1324. Reid alleges that it was Policy 1324 that JMU applied in May 2016 to determine that Reid's relationship with Lese was not a concern. The differences in these policies are significant. Policy 1324 generally prohibited discrimination and harassment on

In early January 2019, JMU placed Reid on paid administrative leave pending its investigation. While on leave, Reid applied for an interdepartmental promotion but was informed in February 2019 that she was "no longer being considered." J.A. 191.

During the investigation, Sirocky-Meck invited Reid to identify witnesses who could support her version of events. Although JMU's Title IX policy entitled Reid to "timely access to documents and information considered by the hearing panel," J.A. 173, Reid says that the deadline to provide witnesses came before Reid received a copy of Lese's Title IX Statement. As a result, Reid asserts that her witnesses had to provide statements before Reid even knew the specific allegations against her. Also, though she subsequently received a copy of Lese's Title IX Statement, well over half of that copy, including the factual information about the allegations, was redacted.

On March 28, 2019, JMU held a hearing on Lese's allegations. Prior to the hearing, Sirocky-Meck informed Reid that neither Reid nor Lese was required to attend the hearing. Reid states that Sirocky-Meck also informed her that, if both women attended the hearing, Reid would not be permitted to directly question Lese. Instead, Reid would need to direct her questions to the chair of the hearing panel, who would vet the questions and, if approved, repeat them to Lese. Sirocky-Meck also told Reid that she and Lese were each permitted to bring one "support person" to the hearing. J.A. 61. According to Reid,

---

the basis of sex or sexual orientation in the employment relationship. Whether a relationship violated the policy therefore depended on whether there was conduct that discriminated or harassed on the basis of sex or sexual orientation. In contrast, the subsequently enacted Policy 1340 effectively made Reid's past relationship with Lese a *per se* violation, as it identified several ways in which sexual relationships between students and faculty would be non-consensual.

Sirocky-Meck described the support person's role as "to provide support to the party they are with" and explained that the support person "do[es] not speak for or represent the party they are supporting." J.A. 61. Reid alleges that Sirocky-Meck stated that no one else was permitted to attend the hearing, effectively denying her access to legal counsel.

Reid chose to attend the hearing with her mother as her support person. Lese did not attend, though she submitted a letter to be read to the hearing panel. The hearing panel also considered unsworn, unsigned statements provided by Lese's four witnesses, who likewise were not in attendance. Reid received copies of these statements prior to the hearing but states that they, like Lese's Title IX Statement, were so heavily redacted that she did not know their factual content.

On April 1, 2019, the hearing panel issued a report finding Reid "responsible" for engaging in a non-consensual relationship in violation of the Title IX Policy. J.A. 193. The hearing panel recommended that Reid be reprimanded by JMU. The hearing panel determined that a reprimand would be sufficient sanction because of the "professional consequences that [Reid] ha[d] already suffered due to the complaint" and because Reid was "at low risk for repeating the behavior." J.A. 194. However, the report stated that "[t]he AVP [Associate Vice President], Dean, or VP [Vice President] over the Responding Party will determine the final outcomes of the case." J.A. 194. Under JMU's policy, the panel's finding was then forwarded to Robert Aguirre, the Dean of the College of Arts and Letters.

On April 30, 2019, Dean Aguirre issued a written decision, titled "Faculty Sexual Misconduct Case Dean/Associate Vice President ["AVP"] Written Decision." which Sirocky-Meck emailed to Reid on the same day. J.A. 204. By this time, Reid had already

8

left her employment at JMU, purportedly due to stigma she suffered from Lese's allegations. The decision included a "Findings" section that set forth the "decision of the Dean/AVP" that Reid was "RESPONSIBLE" for a "Non-Consensual Relationship." J.A. 204. In the "Rationale" subsection, Dean Aguirre recounted the policy's prohibition against non-consensual relationships. J.A. 204. He then stated, "After a thorough review of the evidence, which includes statements from the complainant and the respondent as well as witness statements, I find for the complainant." J.A. 204. Dean Aguirre further stated that Reid and Lese's "relationship was inappropriate and its conduct violates the JMU policy." J.A. 204. Dean Aguirre concluded that "[a] letter of reprimand should be placed in the respondent's file." J.A. 204. The decision also contained a section titled "Sanction Recommendations." J.A. 205. Using form language, the section provided that "[i]f the decision is **Responsibility**, the Dean/AVP also recommend sanctions," with sanction options listed for the Dean/AVP to select. J.A. 205 (emphasis in original). Dean Aguirre marked the "reprimand" option. J.A. 205. In the "Rationale" subsection that followed, Dean Aguirre stated, "A letter of reprimand is suggested in light of the respondent's having already left the university for other employment." J.A. 205. The decision was signed by Dean Aguirre.

In addition to providing Reid with a copy of Dean Aguirre's written decision, Sirocky-Meck's April 30th email to Reid included a document titled "Sexual Misconduct Complaint against a Faculty Member Dean/AVP Decision and Appeal Process and Procedures," which outlined the internal appeals process in JMU's Title IX policy. J.A. 207. This document listed May 5, 2019, as the "Deadline for Reporting and Responding

9

Party to submit an appeal of the Dean/AVP's Decision to the Vice President." J.A. 207. Tracking the language of the Title IX policy, the document stated that "[i]n the absence of a timely written appeal, the decision of the respondent's associate or assistant vice president or dean is final." J.A. 207. However, it explained that either party could appeal to the "vice president," who "shall make a final decision within 5 days after any hearing, or if no hearing is granted, within 5 days after the review of the case on the record." J.A. 207. The document provided, "The decision of the vice president is final, and may not be appealed." J.A. 207. It identified Heather Coltman, JMU's Vice President and Provost, as the vice president in Reid's case.

On May 5, 2019, Reid timely appealed Dean Aguirre's determination to Provost Coltman. On June 19, 2019, Provost Coltman "up[held] the decision of the dean to find [Reid] responsible and to place a letter of reprimand in [her] personnel file."[4] J.A. 200.

Reid contends that prospective employers that have learned of this negative mark on her record at JMU have declined to hire her.

## B. Procedural History

On May 3, 2021, Reid sued JMU, JMU President Jonathan R. Alger, Provost

---

[4] The Title IX policy provided that "the vice president shall make a decision on the appeal within 5 days of the final submission." J.A. 175. But Provost Coltman was out of office between May 9 and June 3, 2019. So, she did not make a decision within the five days that the policy allotted her.

Coltman, Dean Aguirre and Sirocky-Meck ("Defendants") in federal court.[5] Reid alleged three procedural due process violations under § 1983 and the Virginia Constitution,[6] based on Defendants' retroactive application of a non-consensual relationship policy to her, their refusal to allow Reid to confront and cross-examine Lese and her witnesses and their failure to timely provide Reid with Lese's complaint and her witnesses' statements. Reid also brought a Title IX discrimination claim. Defendants moved to dismiss Reid's complaint for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Concerning the former, Defendants asserted that Reid's claims were time-barred by the uncontested two-year statute of limitations.

The district court agreed with Defendants. Interpreting the Supreme Court's decision in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the district court explained that accrual "turn[s] on when a decision is final and whether any review is collateral or is part of a decision-making process that leads to a final decision." J.A. 225. The district court determined that Dean Aguirre's April 2019 written decision was a final decision, making Reid's appeal to Provost Coltman a collateral review of that decision.

---

[5] Reid also brought claims against the Department of Education and the Secretary of the Department of Education. Reid does not appeal the district court's dismissal of those claims for lack of standing.

[6] Our analysis of Reid's due process claims focuses on 42 U.S.C. § 1983. "Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to" Reid's due process claims to the extent they are simultaneously brought under the Constitution of Virginia. *See Shivaee v. Commonwealth*, 613 S.E.2d 570, 574 (Va. 2005).

11

Accordingly, the district court concluded that Reid's claims accrued with Dean Aguirre's April 2019 decision, making her May 2021 complaint untimely. It therefore granted Defendants' motion to dismiss and dismissed Reid's claims with prejudice.

## II. ANALYSIS

On appeal, Reid argues that the district court erred in determining that her claims were untimely and, for that reason, dismissing her complaint against Defendants for lack of subject matter jurisdiction. As an initial matter, the parties frame the statute of limitations issue as a matter of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). It is not entirely clear whether the district court followed the parties in construing the issue to be one of subject matter jurisdiction. For example, the court's dismissal of Reid's claims with prejudice—which would be improper if based on a lack of subject matter jurisdiction rather than failure to state a claim, *see S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (explaining that dismissal for "any . . . defect in subject matter jurisdiction . . . must be one without prejudice")—may indicate it considered the issue to concern whether Reid plausibly stated a claim for which relief may be granted under Rule 12(b)(6). If so, the district court got it right. *See United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013). If

12

not, we reorient the statute of limitations issue to its proper analytical framework—whether Reid failed to state a plausible claim for relief under Rule 12(b)(6).[7]

There is no dispute that Reid's due process and Title IX claims are subject to the two-year statute of limitations provided by Virginia's personal injury cause of action. Indeed, § 1983 does not contain a statute of limitations, so § 1983 claims are governed by "the statute of limitations from the most analogous state-law cause of action." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014). In this case, that is Virginia's cause of action for personal injury. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (recognizing that § 1983 claim was governed by Virginia's two-year statute of limitations for personal injury); *see also* Va. Code § 8.01-243(A). And while we have not previously addressed this issue in a published opinion, "every circuit to consider the issue has held that Title IX . . . borrows the relevant state's statute of limitations for personal injury." *See Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (quoting *Stanley v. Trs. of Cal. State Univ.,* 433 F.3d 1129, 1134 (9th Cir. 2006)). With no argument to the contrary, we consider this two-year statute of limitations applicable to Reid's Title IX claim, as well.

Having filed her complaint on May 3, 2021, Reid's claims are only timely if they accrued on or after May 3, 2019. The question we must answer, then, is when did Reid's claims accrue?

---

[7] Because the district court dismissed Reid's claims with prejudice, we have jurisdiction under 28 U.S.C. § 1291. We review a dismissal for failure to state a claim de novo. *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).

13

A.  Reid's Claims Accrued When JMU Made a Final Decision

Although state law determines the length of the limitation period, accrual of § 1983

claims and Title IX claims is governed by federal law. *See Wallace v. Kato*, 549 U.S. 384,

388 (2007); *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*,

522 U.S. 192, 201 (1997).[8] Under federal law's "standard rule" of accrual, which is

informed by common-law tort principles, a plaintiff's claim accrues when she has a

"complete and present cause of action." *See Wallace*, 549 U.S. at 388 (quoting *Bay Area

Laundry*, 522 U.S. at 201). In other words, "a cause of action accrues when the plaintiff

possesses sufficient facts about the harm done to [her] that reasonable inquiry will reveal

[her] cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir.

1995) (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979)).

Starting with Reid's Title IX employment discrimination claim, we have not

previously determined when such a claim is "complete and present." But generally

speaking, Title IX employment discrimination claims are subject to the same analysis as

employment discrimination claims brought under Title VII of the Civil Rights Act of 1964.

*Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994)

(recognizing that "most courts that have addressed the question have indicated that Title

---

[8] "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law. . . . Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). The same is true of Title IX claims. *Cf. Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983) (finding "that the district court correctly determined that the time when a [federal] cause of action accrues is governed by federal, not state, law").

14

VII principles should be applied to Title IX actions, at least insofar as those actions raise employment discrimination claims" and agreeing that "Title VII, and the judicial interpretations of it, provide a persuasive body of standards to which we may look in shaping the contours of a private right of action under Title IX"). We see no reason why that would not be the case for determining when a Title IX employment discrimination claim accrues. And fortunately, the Supreme Court addressed the timeliness of a Title VII employment discrimination claim in *Ricks*.

There, a college's tenure committee declined to recommend Ricks, a faculty member from Liberia, for tenure. *Ricks*, 449 U.S. at 252. About a year later, the committee reconsidered Ricks for tenure but affirmed its prior recommendation. *Id.* The following month, the college's faculty senate and board of trustees each voted to deny tenure to Ricks. *Id.* Ricks then filed a grievance with the board of trustees' grievance committee. *Id.* A few months later, the board of trustees sent Ricks a letter related to the ongoing grievance process, characterizing its decision to deny him tenure as its "official position." *Id.* at 253 & n.2. The grievance committee ultimately denied Ricks' grievance. *Id.* at 254. Within three years of the grievance committee's decision but more than three years after both the board of trustees' decision and grievance-related letter, Ricks sued the college for national origin discrimination in violation of Title VII and 42 U.S.C. § 1981. *Ricks*, 449 U.S. at 254. Ultimately, the Supreme Court held that Ricks' claims were time-barred.

The Supreme Court determined that the applicable three-year statute of limitations began to run "at the time the tenure decision was made and communicated to Ricks." *Id.* at 258. And despite Ricks' insistence that accrual occurred when his grievance was denied,

15

the Court held that the tenure decision had been made and communicated to Ricks "no later than" when the board of trustees sent Ricks the grievance-related letter recognizing the denial of tenure as its "official position." *Id.* at 261–62. In so doing, the Court reasoned, the board "had made clear . . . that it had formally rejected Ricks' tenure bid." *Id.* at 261. As for the college's grievance process, the Supreme Court explained that "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Id.* (emphasis in original). Thus, the Supreme Court stated that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.* (citing *Elec. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)).

We hold *Ricks*' test for when a Title VII employment discrimination claim accrues applies to Title IX employment discrimination claims. And that means that Reid did not have a complete and present cause of action for Title IX discrimination against Defendants until JMU made clear its official position that Reid violated university policy. *See id.* at 261–62; *see also Doe v. Oberlin Coll.*, 60 F.4th 345, 356 (6th Cir. 2023) (determining that a student's Title IX claim was not ripe when filed before any "certainty about what action [her college] would take on [her] retaliation claim" brought under the college's Title IX policy). *Ricks* suggests that JMU's official position is its non-"tentative"—that is, final—decision in Reid's Title IX proceedings. *See* 449 U.S. at 261.

16

As for her § 1983 procedural due process claims, Reid asserts that they also accrued when JMU made clear its final decision in her Title IX proceedings. However, Defendants disagree, insisting that because Reid takes issue with alleged wrongful acts *during* the investigation and hearing, she "was aware of all the facts underlying her causes of action no later than April 2019, when Dean Aguirre issued a decision finding that Reid had violated University policy." Resp. Br. at 17. The Supreme Court's recent decision in *Reed v. Goertz*, 598 U.S. 230 (2023), provides helpful guidance on this dispute.

In *Reed*, the Supreme Court considered the timeliness of a § 1983 procedural due process claim brought by an inmate in Texas. *Id.* at 232. Several years after his conviction for murder, the inmate moved in state trial court to conduct DNA testing on several pieces of evidence pursuant to Texas' post-conviction DNA testing law. *Id.* at 233. The state trial court denied the inmate's motion. *Id.* The state criminal appellate court affirmed the denial and later denied the inmate's motion for rehearing. *Id.* Less than two years after the denial of his motion for rehearing, the inmate brought a § 1983 claim against Texas in federal court, alleging that the state's post-conviction DNA testing law failed to provide procedural due process. *Id.* The district court dismissed the inmate's complaint, and the Fifth Circuit Court of Appeals affirmed on the basis that the inmate's § 1983 claim was untimely under the applicable two-year statute of limitations. *Id.* at 233–34. The Fifth Circuit explained that the inmate's § 1983 claim accrued when the state trial court denied his motion over two years earlier. *Id.* at 234. However, the Supreme Court reversed, concluding that the inmate's "§ 1983 claim was complete and the statute of limitations began to run when the state litigation ended—when the Texas Court of Criminal Appeals denied [his] motion for

17

rehearing." *Id.* at 236. The Supreme Court reasoned:

> The soundness of that straightforward conclusion is "reinforced by the consequences that would follow" from a contrary approach. If the statute of limitations for a § 1983 suit like [the inmate]'s began to run after a state trial court's denial of a plaintiff's motion for DNA testing (or even after the appeal before the plaintiff's rehearing proceedings), the plaintiff would likely continue to pursue relief in the state system and simultaneously file a protective federal § 1983 suit challenging that ongoing state process. That parallel litigation would "run counter to core principles of federalism, comity, consistency, and judicial economy." We see no good reason for such senseless duplication.

*Id.* at 236–37 (citations omitted). The Supreme Court further noted that "[i]f any due process flaws lurk in the DNA testing law, the state appellate process may cure those flaws, thereby rendering a federal § 1983 suit unnecessary." *Id.* at 237.

We find *Reed* instructive. Had Reid attempted to bring her § 1983 claims before JMU reached a final determination in her Title IX proceedings—whenever that point was—her claims would have been premature. Defendants could have cured the due process errors that Reid alleges, "thereby rendering a federal §1983 suit unnecessary." *See id.* Like the inmate in *Reed* who did not have a complete § 1983 claim until his state court proceedings ended, we find that Reid did not have a complete § 1983 claim until her Title IX proceedings ended—that is, when JMU reached a final determination in her case.

With this understanding, whether both Reid's Title IX and due process claims are timely depends on when JMU reached a final decision in Reid's Title IX proceedings. So, we must now determine when that occurred.

18

### B. JMU Did Not Reach a Final Decision Until Provost Coltman Denied Reid's Appeal

Taken together, *Ricks* and *Reed* suggest that JMU reached a final decision in Reid's Title IX proceedings whenever it made clear its official position that concluded those proceedings. *See Ricks*, 449 U.S. at 261–62; *Reed*, 598 U.S. at 236. While Defendants contend that Dean Aguirre's April 2019 decision that Reid had violated Policy 1340 was "clearly an official finding," Resp. Br. at 25, Reid disagrees. Reid asserts that Dean Aguirre's decision did not make clear that it was the official position of the University, as it lacked indications of finality. Reid also contends that the explicit language of JMU's Title IX policy indicated that Provost Coltman's decision, not Dean Aguirre's, was JMU's final determination in her Title IX proceedings.

Based on this record, JMU did not make clear that Dean Aguirre's decision was its official position. To be sure, parts of his written decision suggested finality. For example, Dean Aguirre stated, "After a thorough review of the evidence, which includes statements from the complainant and the respondent as well as witness statements, I find for the complainant." J.A. 204. He also stated that Reid and Lese's "relationship was inappropriate and its conduct violates the JMU policy" and that "[a] letter of reprimand should be placed in the respondent's file." J.A. 204. And he made these findings in a document titled, in part, "Written Decision," which itself might suggest finality. J.A. 204. But read in its entirety, the written decision is more preliminary than final. For example, the written decision identified Dean Aguirre's selection of a reprimand as a "Sanction Recommendation[]." J.A. 205. Dean Aguirre even stated, "A letter of reprimand is *suggested* in light of the respondent's having already left the university for other employment." J.A. 205 (emphasis

19

added).[9] The decision's characterization of a reprimand as a "suggested" "recommendation[]" does not support its finality.

Still, Defendants contend that Dean Aguirre's written decision was "clearly" JMU's final determination because the panel report upon which Dean Aguirre made his decision expressly stated that the Dean's decision would "determine the final outcome[] of the case." *See* Resp. Br. at 25–26 n.5. But, as Reid notes, that is not an accurate account of the report's language. The recommendation stated that "[t]he AVP, Dean, *or VP* over the Responding Party will determine the final outcomes of the case." J.A. 194 (emphasis added). There is no dispute that Provost Coltman was the "VP over the Responding Party" in Reid's case. Additionally, though Defendants recognize that Provost Coltman's June 2019 decision upheld "the dean's final decision," *see* J.A. 200, Provost Coltman's after-the-fact description of Dean Aguirre's written decision as "final" did not make the finality of the Dean's decision clear when it was first communicated to Reid in April 2019.

What's more, the language of JMU's policy concerning the internal appeals process undermines the argument for the finality of Dean Aguirre's decision in this case. As noted

_____

[9] To this point, Defendants contend that Reid never internally appealed Dean Aguirre's written decision to the extent it recommended a specific sanction. They state that Reid only internally appealed Dean Aguirre's responsibility finding. Defendants therefore suggest that the "Sanction Recommendations" portion of Dean Aguirre's written decision is irrelevant to our inquiry into JMU's official position. But, to the extent Reid appealed Dean Aguirre's finding that she was responsible for a non-consensual relationship, she necessarily challenged his recommendation of any sanctions based on that finding. Moreover, Dean Aguirre's finding of responsibility and recommended sanction were located within the same three-page written decision. For purposes of determining whether that written decision made clear any official position of JMU, we decline to ignore some sections in favor of others.

20

above, Reid was provided with a document outlining the Title IX policy's internal appeal process at the same time she received Dean Aguirre's written decision. That document informed Reid that, under the policy, she had five days to appeal Dean Aguirre's written decision to Provost Coltman. Lifting language from the policy, the document stated, "In the absence of a timely written appeal, the decision of the respondent's . . . dean is final." J.A. 207. But, if a timely appeal was submitted to the appropriate vice president, the document explained that the vice president "shall make a final decision within 5 days" and that her decision "is final, and may not be appealed." J.A. 207. In other words, JMU's own language reveals that Dean Aguirre's April 2019 written decision was not "final" if Reid filed a timely appeal. And it is undisputed that she did.

Dean Aguirre's April 2019 written decision did not make clear JMU's official position concluding Reid's Title IX proceedings. *See Ricks*, 449 U.S. at 259–62; *Reed*, 598 U.S. at 236. Rather, JMU's official position was made clear to Reid when Provost Coltman denied her appeal with a "final," non-appealable decision in June 2019.[10] To hold otherwise would be to ignore the plain language of JMU's own Title IX policy that it applied to Reid. Based on this determination, we find that Reid's May 2021 due process and Title IX claims are not barred by the applicable two-year statute of limitations, as her claims had not yet accrued in May 2019.

---

[10] The Sixth Circuit reached a similar conclusion in determining when a dismissed medical student's due process claims against his former medical school accrued. *See Endres v. Ne. Oh. Med. Univ.*, 938 F.3d 281, 296 (6th Cir. 2019) (holding that the student's due process claims did not accrue until he learned of "a final, non-appealable decision recommending his dismissal").

### III. CONCLUSION

For these reasons, we reverse the district court's dismissal of Reid's due process and Title IX claims against Defendants and remand for further proceedings.

*REVERSED AND REMANDED*